UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RICARDO G. PALOMINO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No. SA-06-CA-713 XR** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On this date, the Court considered the final administrative decision of the Commissioner of Social Security regarding the denial of Mr. Ricardo G. Palomino's claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under the Social Security Act. For the reasons discussed below, the Court ACCEPTS the Magistrate Judge's recommendation and AFFIRMS the Commissioner's denial of Plaintiff's application for disability and disability insurance benefits.

### I. Factual and Administrative Background

Plaintiff is a 36 year old male and a high school graduate. Tr. at 18. His past work experience consists of positions of field maintenance worker, painter's assistant, and stocker at an Albertson's drug store. Tr. at 18. On October 24, 2003, Plaintiff filed an application for SSDI and SSI benefits alleging disability based on Hodgkin's disease and the side effects of chemotherapy, with an onset date of January 7, 2002. Plaintiff has not engaged in "substantial gainful employment activity" since

-1-

the onset of the alleged disability.[1] Tr. at 18.

In 2001, Plaintiff thought he pulled his neck, but the condition did not improve over the ensuing period of several weeks. At this point, Plaintiff sought medical attention and underwent a series of tests. Plaintiff first saw Dr. Moises Soulas on January 17, 2002. Tr at 16. Dr. Soulas performed a biopsy on January 22, 2002 in response to his suspicion of lymphoma from the initial examination. The biopsy tested positive for Hodgkin's lymphoma, mixed cell type. Plaintiff then underwent a vein port-a-cath surgery.[2] After the surgery, Plaintiff's medical condition and specifically his ongoing treatment were under the supervision of Dr. Jesse Medellin.

Dr. Medellin released Plaintiff to return to part-time work on February 14, 2002. Tr. at 398. Plaintiff began chemotherapy on March 29, 2002 and completed the treatment on April 26, 2002. Tr. at 306. Dr. Medellin assessed Plaintiff as having done extremely well with the treatment on July 22, 2002. Tr. at 306. Dr. Medellin based this positive conclusion in part on the results of a PET scan, which was conducted on March 30, 2002, and considered to be essentially normal. Tr. at 306. Dr. Medellin performed further examinations and CT scans during August 2002, which also revealed no abnormalities. Dr. Medellin reaffirmed his assessment that Plaintiff was doing well with no abnormalities on September 16, 2002. Dr. Medellin continued to regularly see Plaintiff and assess his condition periodically, and on August 4, 2004 asserted again that the there was no evidence of

---

[1] Substantial gainful activity is work that involves significant physical or mental activities. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or work responsibilities are lessened from previous employment and that gainful work activity is the kind of work usually done for pay or profit. *See* 20 C.F.R.§§ 404.1572, 416.972; *and* Tr. at 15-16.

[2] A port-a-cath surgery involves the implanting of a long-term central venous catheter with subcutaneous port(s).

recurrence and all of Plaintiff's examinations had been assessed as essentially normal. Tr. at 435.

Plaintiff has suffered from a number of medical conditions as a result of the side effects of chemotherapy, which was the focus of Plaintiff's treatment for Hodgkin's lymphoma.  Plaintiff alleges that he has experienced numbness in his extremities, specifically he asserts the numbness has occurred in both his legs and also the thumb, middle, and index fingers of his left hand. As a result of this condition in his legs, Plaintiff contends that he falls down. Pl. Br. at 4. Plaintiff also alleges that the chemotherapy has resulted in his suffering chronic fatigue, and a constant, urgent, and unpredictable need to urinate. Pl. Br. at 4. Related to these conditions, Plaintiff states that he has both a need to sleep for long periods of time, or take naps and also is required to make frequent trips to the restroom. *See generally* Tr. at 502-504.

Specifically, Plaintiff alleges that he suffers from  the following symptoms and ailments: 1) Hodgkins Lymphoma, 2) a medi-port device implant, 3) chronic fatigue, 4) numbness in leg, 5) numbness in thumb, middle, and index fingers of the left hand, 6) incipient need to urinate frequently without notice, and 9) constant pain. Pl. Br. at 4. These alleged conditions are largely attributable to chemotherapy that the Plaintiff endured as the primary treatment for his condition of Hodgkin's lymphoma.

Plaintiff endured a lengthy series of treatment involving various medications that were injected into his body through a medi-port[3] inserted in his chest. The medi-port was implanted on January 29, 2002, and Plaintiff contends that the inherent restrictions associated with the medi-port device serve as a disabling impairment. Pl. Br. at 6. Specifically, Plaintiff asserts that the presence

---

[3]Plaintiff is required to wear this device.  In the event that his Hodgkin's disease flares up, he must be able to immediately begin another round of chemotherapy. Any heavy physical activity could cause the medi-port to rupture the vein in which it is inserted. Tr. at 495.

of the device restricts his ability to perform tasks such as lifting amounts over 10 to 20 pounds, and that the medical concerns relating to the device mandate that he not perform certain tasks. Pl. Br. at 8-9.  Plaintiff received medications such as Allopurinol, Tylenol, Compazine, Mycelex, Maxiprime, and others. Further, Plaintiff was found to suffer from an enlarged spleen during the course of his treatment. Tr. at 253.

Plaintiff filed an application for Social Security Income ("SSI") benefits or Disability Insurance Benefits on October 24, 2003. Plaintiff alleged disability beginning on the aforementioned date of January 7, 2002. The Social Security Administration denied the application for benefits both initially and on reconsideration.

On October 19, 2005, an Administrative Law Judge ("ALJ") held a hearing on which he based his determination. Plaintiff was represented by an attorney at the hearing and his claims were considered *de novo*. At the hearing and in coming to a decision, the ALJ was privy to medical reports and medical history relating to Plaintiff and testimony regarding Plaintiff's condition. Plaintiff testified at the hearing alleging the existence of subjective symptoms and pain which tended to prove the alleged disability.  The ALJ also heard testimony from Howard Marnan, a vocational expert, regarding the ability and capacity of Plaintiff to perform tasks that would qualify or not qualify him to be gainfully employed in available occupations. The vocational expert testified that there were a number of jobs that the were consistent with the type of work that Plaintiff could perform considering his impairments that the ALJ based his findings on. The vocational expert testified that Plaintiff would be more inclined to do well with his condition in an indoor environment, if in fact Plaintiff suffered from a condition causing the frequent need to urinate, which is one of the subjective symptoms alleged by Plaintiff. Tr. at 498.

-4-

The medical records of Plaintiff were also scrutinized. The relevant portions of these records, in large part, pertain to the treatment notes and conclusions of Dr. Medellin.  Dr. Medellin's notes and medical opinions serve as those of the treating physician in this case. Dr. Jimmy Brazeale also assessed Plaintiff's condition and indicated that in his opinion, Plaintiff did not suffer from a severe impairment. Tr. at 431.

The ALJ issued a written opinion on April 28, 2006. The ALJ denied the benefits on grounds that Plaintiff was not disabled because he could perform a full range of light work; and therefore, he could necessarily perform jobs that existed in significant numbers in the national economy. Plaintiff then requested review of the ALJ's decision on August 4, 2006 from the Appeals Council. However, the Appeals Council determined that no basis existed to grant review of the ALJ's decision and the ALJ's determination from April 28, 2006 became the final decision of the Commissioner. As the record indicates, Plaintiff fully exhausted his administrative remedies before filing the instant action.

## II. ALJ Findings

Specifically the ALJ made the following determinations regarding Plaintiff's condition: he had not engaged in substantial gainful activity since the onset of the disability; his Hodgkin's disease is considered a severe impairment pursuant to the applicable requirements[4]; his medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; his allegations regarding his limitations are not totally credible; he has the residual functional capacity ("RFC")[5] to perform light work; he is a "younger individual"

---

[4]20 C.F.R. §§ 404.1520, 416.920.

[5]As the ALJ indicated, RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,"

with a high school education; he has no transferable skills from any past relevant work; he is not disabled as directed by Medical-Vocational Rule 202.21 based on his exertional capacity for light work, age, education, and work experience[6]; and he was not-disabled, as defined by the Social Security Act, at any time through the date of the decision.[7]

### III. Standard of Review

The Court reviews *de novo* those portions of the Report and Recommendation to which objection is made. *See* 28 U.S.C. § 636(b)(1).  Such a review means that the Court will examine the entire record and will make an independent assessment of the law.  However, in examining the Commissioner's decision denying disability insurance benefits, the Court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  In this case, Plaintiff objects on the basis of a lack of substantial evidence to support the decision of the ALJ.

"Substantial evidence is more then a scintilla, less then a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*,

---

and a regular and continuing basis means 8 hours a day for 5 days a week or an equivalent work schedule. 20 C.F.R. §§ 404.1545, 416.945; Soc. Sec. R. 96-8p; *and see* Tr. at 382 n.1 (citing *Watson v. Barnhart*, 288 F.3d 212, 217-218 (5th Cir. 2002)).

[6]The ALJ determined that Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the RFC to perform substantially all of the seven primary strength demands required by work at a given level of exertion and there are no non-exertional limitations. He opined further, that, such as in this case, when all of the criteria of a Medical-Vocational Rule are met, the existence of occupations in the national economy are met by administrative notice. *See* Soc. Sec. R. 83-11, 83-10; *see also* Tr. at 18.

[7] *See* 20 C.F.R. §§ 404.1520(g) and 416.920(g).

895 F.2d 1019, 1021 (5th Cir. 1990).  When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.  Four elements are weighed by the Court in determining whether the Commissioner's decision is based on substantial evidence: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience.  *Id*. at 174.  While a *de novo* review may result in the Court reaching a different ultimate conclusion, conflicts in the evidence are to be resolved by the Commissioner.  *Id*.

### IV. Evaluation Process under the SSA

The Social Security Administration has developed a five-step process to evaluate disability claims.  20 C.F.R. §§ 404.1520, 416.920.  The first step is to determine whether the claimant is currently employed in substantial gainful activity.  If so, the claimant is not disabled. The second step is to determine whether the claimant's impairment is severe.  Only a severe impairment allows for advancement to step three.  During step three, the severe impairment is compared with a list of specific impairments.  If the claimant's impairment meets or medically equals one of the listed impairments, the plaintiff is disabled.  Otherwise, the analysis must progress to step four, at which point the Commissioner determines whether, in light of the claimant's residual functional capacity (RFC), the impairment precludes a claimant from returning to his past relevant work.  *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).  If it is determined that the claimant cannot return to his past relevant work, the burden of proof shifts to the Commissioner during step five to show that the impairment does not prevent the claimant from performing other jobs that exist in significant numbers in the national economy, considering residual capacities, age, education, and work

experience. *Id*. If the Commissioner carries this burden, the burden shifts back to the claimant to prove that he is unable to perform the alternative work. *Id*.

### V. Plaintiff's Objections and Analysis

**A.     The ALJ properly considered Plaintiff's allegations of pain and other symptoms, and he was within his discretion in making his credibility determination regarding these subjective complaints. The ALJ's findings were supported by objective medical evidence in the record and must be affirmed.**

Whether pain is disabling is an issue for the ALJ, who has the responsibility of resolving conflicts in the evidence. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Further, the ALJ's determination of the disabling nature of the claimant's pain is entitled to considerable deference. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Subjective complaints of pain, such as those at issue in this case, must also be corroborated by objective medical evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). At most, a comprehensive review of the record in this case simply indicates an unclear, or perhaps mixed collection of evidence regarding Plaintiff's medical condition and its impact on his ability to work. In such a situation, the decision of the ALJ should be upheld as long as there is substantial evidence justifying his positions. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The Plaintiff asserts that the ALJ made a decision that was contrary to the evidence presented in this case and his testimony at the hearing. However, the ALJ did consider the Plaintiff's statements, and simply found them to not be totally credible. Tr. at 16. This Court does not re-weigh the evidence. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). When there is a conflict in the evidence, as is the case here, it should be resolved by the ALJ, not this Court. The Plaintiff testified about pain and other subjective symptoms he has suffered and continues to suffer. Tr. at 489-495. The ALJ chose not to adopt this testimony in full. Rather, the ALJ noted that none of the objective

-8-

medical evidence presented supported the Plaintiff's claims. Tr. at 16. Further, an absence of objective support of the existence of pain has been recognized as a proper and sufficient basis for unfavorable credibility findings. *See Hollis v. Bowen*, 837 F.2d 1378,1385 (5th Cir. 1988).

The mere existence of pain does not automatically constitute grounds for receiving disability benefits. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985). Pain constitutes a disabling condition when it is a "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See id.* at 1281. However, Plaintiff contends that pain alone can be a disability. *See Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 2000). While Plaintiff is correct that in certain circumstances the existence of pain alone can provide an adequate basis to support a finding of disabled, it can only do so where the pain is demonstrated to be linked to a medically determinable impairment. *Id.* at 642 (citing *Cook v. Heckler*, 750 F.2d. 391, 395 (5th Cir. 1985)). Further, the court in *Abshire* clearly stated that an "unfavorable credibility finding will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Id* at 642. The application of this standard to the present case further illuminates the legitimacy of the ALJ's decision. As will be demonstrated, not only did the ALJ weigh the objective medical evidence, and assign an articulated reason for discrediting Plaintiff's subjective complaints of pain and other symptoms, but that articulated reason was based on the uncontroverted objective medical evidence in the record. Tr. at 16-17.

The Plaintiff contends that he in fact did complain of the symptoms at a time when he could not possibly have been thinking about "building a case" for benefits. Pl. Br. at 4. The Plaintiff posits that there is no evidence that any of the medical providers he has worked with have ever found him

to be incredible, and also that he has never been diagnosed as a hypochondriac. *Id*. While these assertions may very well be true, they do not serve as a substitute for the substantial evidence that is lacking in the record in support of the Plaintiff's allegations. Additionally, even if they did constitute such substantial evidence, the legitimacy of the ALJ's decision is contingent only upon the presence of supporting substantial evidence, and the application of the appropriate legal standards. *Martinez*, 64 F.3d at 172-173. Both of the established criteria were met in this case. Plaintiff also fails to support his argument with any explanation for the lack of objective medical evidence in the record supporting his allegations. While Plaintiff contends that he did not make certain or specified complaints to his doctors because he was not thinking about securing benefits, and rather was thrilled to be alive, there is no explanation offered for why an individual in that situation would not discuss these allegedly serious medical impairments with a doctor. *See* Pl. Br. at 20. The absence of consistent complaints provides the reasonable inference that Plaintiff was not suffering from a serious impairment. This reasoning was employed in the ALJ's treatment of Plaintiff's inconsistent complaints of "decreased energy." Tr. at 16, 275.

To the extent that Plaintiff contends that the ALJ inappropriately disregarded his alleged symptom of fatigue or other symptoms, there is objective medical evidence in the record to the contrary. *See, e.g.,* Tr. at 286-88, 328-31, 333-37.  Plaintiff  complained of experiencing fatigue or "decreased energy" once on October 29, 2003 to Dr. Medellin. Tr. at 275. After this complaint, the Plaintiff did not consistently raise the issue. This provides the substantial evidence necessary for the ALJ to have simply determined that a one time feeling of "decreased energy" does not amount to a condition of chronic fatigue. *See* Tr. at 16. Further the issue relating to numbness of extremities was never mentioned in any of the medical evidence provided by Dr. Medellin after the time he began

noting symptoms. In fact, the objective evidence provides more than an adequate basis for the ALJ's determination insofar as Dr. Medellin's neurological report stated that Plaintiff was normal and there was no evidence of cyanosis, clubbing, or edema of the extremities. *See* Tr. at 273-75, 435-36.

Dr. Medellin, the treating physician, also stated in a medical report that Plaintiff was responding favorably to the chemotherapy he was receiving as treatment for Hodgkin's disease. Tr. at 306. Dr. Medellin released Plaintiff for part time work on February 14, 2002. Tr. at 298. After the Plaintiff completed his chemotherapy in its entirety, Dr. Medellin stated that Plaintiff had "done extremely well with chemo," and less than one month later determined that Plaintiff was in complete remission.[8] Tr. at 302, 306. Dr. Medellin, on September 16, 2002, reported that Plaintiff was doing well with no abnormalities. Tr. at 293. The ensuing visits involving Plaintiff and Dr. Medellin were summarized by Dr. Medellin concluding that Plaintiff's condition was essentially normal. Tr. at 17. Further, Plaintiff contends that his disability is derived from the side effects of chemotherapy. The medical records do not indicate that the Plaintiff suffered from weakness, fatigue, or a significant loss of function in the legs. The objective medical evidence also does not contain findings, diagnosis, or evidence that Plaintiff suffered from urinary frequency. Tr at 17. Plaintiff's attorney described the medical records himself as being "skimpy." Tr. at 488. Further, Plaintiff's counsel provided no exhibits or other evidence which tended to prove the allegations. Tr. at 488 These medical conclusions and treatment records alone serve as objective medical evidence that is contrary to Plaintiff's subjective allegations, and operate as substantial evidence in support of the ALJ's determinations.

---

[8]Dr. Medellin made the statement regarding the Plaintiff's success with chemotherapy on July 22, 2002, and then termed the Plaintiff to be in complete remission on August 19, 2002.

Plaintiff fails to cite any instances in the record where the subjective allegations of symptoms are substantiated by anything other than his own testimony. *See generally* Pl. Br. at 16-20. However, Plaintiff also objects, asserting that there are a number of disabling impairments that can be associated with Hodgkin's disease. Pl. Br. at 4. As mentioned, in order to determine whether an individual is disabled, the five-step process is employed. Additionally, the Social Security Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Crowley*, 197 F.3d at 198 (citing 42 U.S.C. § 423 (d)(1)(A)). Hypothetical or possible conditions associated with Plaintiff's condition are insufficient to satisfy the requirement that the conditions be medically determinable. Similarly, an absence of objective medical evidence of the specific symptoms that Plaintiff does allege provides substantial evidence that those conditions do not exist. Further, as noted, Plaintiff's Hodgkin's disease is currently stated as being in complete remission. The ALJ appropriately applied the five-step process, which is the proper legal standard, and assessed Plaintiff's impairments in light of the applicable standard for disability, as defined by the Social Security Act.

Plaintiff next relies on *Quinones v. Secretary* for support of his position. *Quinones v. Secretary*, 567 F. Supp. 188 (E.D.N.Y. 1983). Plaintiff contends that pursuant to *Quinones*, any residual impact caused by therapy must be evaluated, and that these impairments are to be considered in combination with one another. *Id*. Plaintiff then argues that the ALJ inappropriately failed to consider all of the symptoms and ailments that he suffered from, which he alleges include the following: 1) Hodgkins Lymphoma, 2) a medi-port device implant, 3) chronic fatigue, 4) numbness

in leg, 5) numbness in thumb, middle, and index fingers of the left hand, 6) incipient need to urinate frequently without notice, and 9) constant pain. Pl. Br. at 4. These alleged conditions are largely attributable to chemotherapy that the Plaintiff endured as the primary treatment for his condition of Hodgkin's lymphoma.

Plaintiff contends that the finding of non-severity in this case is based upon a failure to consider the cumulative impact of a claimant's alleged impairments. *Wingo v. Bowen*, 852 F.2d 827, 830-31 (5th Cir. 1988). Plaintiff argues that the case must be remanded because an ALJ's conclusory evaluation of the evidence, without consideration of the combined impact, amounts to a failure to apply the appropriate legal standards.[9] *Scott v. Heckler*, 770 F.2d 482 (5th Cir. 1985). However this assertion, while accurate, simply does not apply to this case. The ALJ did consider the cumulative impact of the alleged impairments that were found to be supported as true by the objective evidence in the record. *See generally* Tr. at 16-19. The ALJ specifically outlined the sources of evidence he was bound to, and in fact, did evaluate, and his determinations were arrived at appropriately. *See generally Beck v. Barnhart*, 205 Fed. Appx. 207, 210 (5th Cir. 2006). To hold otherwise would be to impinge, albeit indirectly, upon the deference that is clearly required in considering the ALJ's conclusions regarding subjective allegations and conflicting evidence.

The ALJ met the appropriate standard by specifically recognizing each of the Plaintiff's alleged ailments and symptoms that he found not to be credible. Tr. at 16-17. After recognizing the symptoms and ailments that were rejected, the ALJ demonstrated that none of them were supported

---

[9] "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416. 923.

by objective medical evidence in the record. Further, as noted above, the lack of any objective medical evidence is an adequate basis for the ALJ's determination that the specific allegations of the ailments and symptoms at issue were not totally credible.  The ALJ is in the best position to assess a claimant's credibility because the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d  160, 164 at n.18 (5th Cir. 1994). This standard was clearly met with regard to the ALJ's consideration of the Plaintiff's pain in this case. The appropriateness of the ALJ's determination regarding the credibility of the Plaintiff's allegations of pain is emboldened when considering the objective medical evidence in the record indicates that the Plaintiff responded well to the treatment he had received. *See* Tr. at 306 (Dr. Medellin stating that the Plaintiff had responded extremely well to chemotherapy).

The ALJ's determination regarding the credibility of Plaintiff's subjective allegations is fully supported by the reasoning contained in his written decision.  *See generally* Tr. at 14-19. The ALJ correctly and specifically stated that he was bound to consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[10] and also any medical opinions, which he accurately described as statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.[11] Tr at 16.

The ALJ considered the credibility of Plaintiff's testimony regarding his impairments applying the appropriate legal standards. The ALJ then explained that the allegations of impairments were not totally credible in light of Plaintiff's description of his activities and life-style, the degree

---

[10] *See* 20  C.F.R. §§ 404.1529, 416.929; *and* Soc. Sec. R. 96-7p.

[11] *See* 20 C.F.R. §§ 404.1527, 416.927; *and* Soc. Sec. R. 96-2p., 96-6p.

of medical treatment required, Plaintiff's efforts to achieve relief of pain symptoms, and the reports

of the treating and the examining practitioner. Tr. at 16. The record reveals that Plaintiff testified that

he is not currently on medication and has not been since August of 2002. Tr. at 493. The ALJ also

inquired at length into Plaintiff's daily activities which involve reading and watching television as

well as occasional trips to the library. Tr. at 503-05. The ALJ also clearly considered the medical

reports and conclusions of Dr. Medellin, as much of the ALJ's opinion was adopted directly from

the treating physician. *See generally* Tr. at 14-20. In his consideration of the medical reports and

Plaintiff's subjective allegations the ALJ also examined the treatment that Plaintiff required. The

record indicates that the ALJ discussed both the chemotherapy and the medi-port device at length

with Plaintiff. Tr. at 490-95. It is clear that the ALJ considered the subjective complaints in a

comprehensive fashion as he was required to do. The ALJ appropriately resolved the issue of

Plaintiff's credibility with respect to his subjective allegations, and the ALJ made affirmative

findings regarding Plaintiff's subjective complaints by expressly rejecting his allegations that those

complaints are of disabling severity. *See Falco*, 27 F.3d at 164, n.18

    The Fifth Circuit has held that for there to be a finding of no substantial evidence, there must

be a "conspicuous absence of credible choices or no contrary medical evidence." *See Dellolio v.

Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). A review of the record in its entirety indicates that there

was not such an absence of credible choices in this case. Further, the ALJ appropriately resolved

conflicts in the evidence in this case, which is within his discretion.

**B.    The ALJ properly considered the issue of the medi-port device implant and associated
       limitations.  The ALJ properly applied the Medical-Vocational Guidelines and was
       thorough in his analysis.  As a result, the ALJ's decision must be affirmed.**

    Plaintiff objects to the ALJ's decision and the Magistrate Judge's Recommendation because

-15-

he contends that they failed to properly address the medi-port implant, and its ramifications for Plaintiff. Pl. Br. at 6. Plaintiff notes that the device was required by a treating physician, and that the same treating physician has not authorized Plaintiff to go back to work full-time. *Id.* Further, Plaintiff asserts that the treating physician's determination that Plaintiff could not perform his previous work and also that  heavy lifting could cause a rupture of the medi-port provide substantial evidence that Plaintiff was disabled. *Id.* Plaintiff contends that the ALJ acted inappropriately in failing to address these issues.

After the ALJ determined that Plaintiff had Hodgkin's disease and therefore suffered a severe impairment, the restrictive nature of the impairment(s) becomes the issue. The impairment of Hodgkins disease was determined to be severe in this case, in that the Plaintiff was not performing substantial gainful activity, and the condition had persisted or is expected to last for 12 months or more. Tr. at 15-17.  While the impairment was determined to be severe, it was not determined to be severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P., Regulations No. 4. Tr. at 16. Therefore, the ALJ had to determine whether based on Plaintiff's residual functional capacity, he had the capacity to perform the requirements of his past relevant work, or in the alternative, other jobs existing in significant numbers in the national economy. Tr. at 16. In making this decision the ALJ must also consider Plaintiff's residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 416.963- 416.965. The ALJ did consider all of these factors, as is evidenced by the explicit consideration of each in his written opinion. Tr. at 17-18. The ALJ acknowledged that the Plaintiff  was a 36 year old high school graduate. Tr. at 18. Further, the ALJ not only considered Plaintiff's past work experience, but inquired at length into it and also relied on the substantial evidence provided by the vocational expert's testimony in

determining that Plaintiff possessed no transferable skills. Tr. at 497, 18.

The ALJ went on to consider Plaintiff's residual functional capacity which was based in part on the credibility of the Plaintiff's subjective allegations of pain and other symptoms. As demonstrated, the ALJ appropriately arrived at his determination regarding the credibility of Plaintiff's subjective allegations, and therefore the ALJ was supported by substantial evidence in his decision that Plaintiff possessed the RFC to perform light work. The determination that Plaintiff could perform light work and only light work is buttressed by the testimony of the vocational expert.[12] Further, because Plaintiff's previous jobs in both field maintenance and stocking were determined to be semi-skilled with medium exertional requirements, and his job as a painter's assistant was determined to be semi-skilled in nature with heavy exertional requirements, Plaintiff was determined to not be capable of performing his past relevant work.[13] Tr. at 496-499, 17.  This conclusion is also consistent with the limitations associated with the medi-port device, Dr. Medellin's medical notes and opinions, and also the testimony of Mr. Marnan, the vocational expert. Tr. at 492, 495, 498. As such, the ALJ's determinations were supported by substantial evidence contained in the record, and the appropriate legal standards were applied. The ALJ then found that because the evidence supports a finding that the claimant can perform the demands of the full range of light work, a finding of "not-disabled' is directed by Medical-Vocational Rule 202.21. Tr. at 18.

Plaintiff asserts that the ALJ essentially determined 1) that nothing was wrong with him, and

---

[12]Light work is generally defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." Soc. Sec. R. 83-11

[13] The vocational expert testified that his classifications of these jobs were either based on, or consistent with the Dictionary of Occupational Titles. He considered the Plaintiff's past work individually in determining the appropriate classifications. *See* Tr. at 496-499.

then 2) that he could no longer perform his previous relevant jobs. Pl. Br. at 7-8. However, this assertion proves false on a comprehensive review of the record. The ALJ specifically stated that he is bound to consider the degree of medical treatment required by Plaintiff. Tr. at 16. The ALJ's conclusion that Plaintiff was only capable of performing light work is consistent with the opinion of Dr. Medellin and also with the limitations imposed by the medi-port treatment device that Plaintiff is required to use.[14] The legitimacy of this determination is strengthened when considering that the ALJ chose not to adopt other allegations made by Plaintiff because there was simply no objective medical evidence in the record which tended to prove those allegations. Tr. at 16-17. In contrast, when the ALJ considered the treatment devices and medical evidence, he determined that the requirement that Plaintiff use the medi-port device, and the medical support for the reasons it had to be used, mandated that Plaintiff only perform work that adequately accounts for these inherent limitations associated with the device. Tr. at 17.  Further, it is the restrictive nature of the medi-port device that warranted consideration by the ALJ and not the technical mention of the presence of it. Plaintiff asserts that the restrictions associated with the device involve limitations on the ability to lift significant amounts. However, Plaintiff then contends that the device was not considered. The record reveals that the ALJ proceeded with his analysis on the assumption or finding that Plaintiff suffered from the exact limitation that the medi-port device imposes. Tr. at 497-99. The Court finds that the ALJ appropriately accounted for the limitations associated with the medi-port device.

The ALJ did not find that nothing was wrong with Plaintiff, but rather that the objective medical evidence only indicated that Plaintiff suffered a limited impairment that would still allow

---

[14] "Any heavy lifting, bending, or stooping could cause the medi-port to 'pop out' and rupture the vein into which it is inserted." Pl. Br. at 5.

him to perform substantially all of the work categorized as light. The requirement that light jobs be shown to be available in significant numbers in the national economy is met by administrative notice in that Plaintiff was legitimately found to be able to perform the full range of the jobs categorized as light work.[15] The ALJ then noted, that having found Plaintiff to suffer from only exertional limitations relating to his ability to lift certain amounts, and considering Plaintiff's RFC, age, and education, that the Medical-Vocational Guidelines directed a finding of not-disabled. *See Crowley*, 197 F.3d at 199 (holding that use of the grid guidelines was appropriate where claimant was found only to suffer from exertional limitations or where non-exertional limitations do not significantly affect the claimant's RFC); *see also See Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 726 (E.D. Tex. 2006)[16]. Such a finding was made in this case, and was supported by substantial evidence.[17] Specifically, the ALJ found that Plaintiff suffered from an exertional limitation associated with the medi-port device. As noted, the lifting limitation was the basis for the ALJ's decision that Plaintiff is only capable of light work. Therefore, the ALJ was not bound to employ the assistance of a

---

[15]" Administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy. . . Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." 20 C.F.R. 404, Subpt. P, App. 2 (b).

[16]The grids are a matrix of general findings which take into account age, education, work experience, and residual functional capacity. *See Allsbury*, 460 F. Supp. 2d at 721 (citing 20 C.F.R. § 404.1569a (b)).

[17] "Exertional refers to an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of the seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. An exertional limitation is 'an impairment-caused limitation of any one of these activities'." *Allsbury*, 460 F. Supp. 2d at 720, n.6 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *and* Soc. Sec. R. 96-9P. "Nonexertional" refers to work related limitations and restrictions that are not exertional, such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, crouching, crawling, reaching, handling, fingering, and feeling. Nonexertional impairments are those which do not result in strength limitations. *See id* at n.7.

-19-

vocational expert, but did so anyway.[18] The ALJ makes no specific finding of any nonexertional limitation that would obligate him to use the vocational expert, and in fact he explicitly finds that the alleged conditions that would presumably serve as nonexertional limitations are not supported by objective medical evidence.

Contrary to Plaintiff's objection, and in an abundance of caution the ALJ applied the appropriate legal standards in his questioning of the vocational expert. As has been demonstrated, the ALJ could have simply made his determination regarding the last prong of the analysis by application of the Medical-Vocational Guidelines to the exclusion of any vocational testimony. *Id*. However, the ALJ chose to hear testimony from Mr. Marnan in order to facilitate a thorough evaluation and provide the necessary basis for making his determination in the event that he found Plaintiff suffered from a non-exertional limitation which significantly affected his RFC.[19] *See id* at 720-24. Specifically, the ALJ proceeded with the vocational expert to explore the available opportunities Plaintiff might have if he was found to suffer from a significant limitation relating to the frequent need to urinate. Tr. at 498. The ALJ was thorough in this regard and applied the appropriate legal standard in recognizing that direct application of the guideline grids would be inappropriate in the event that Plaintiff was found to suffer from any of the alleged non-exertional

---

[18]"When an ALJ determines that a claimant suffers from a nonexertional impairment that prevents performance of past work, the Commissioner generally must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform." *Allsbury*, 460 F. Supp. 2d at 721-22 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)).

[19] The court noted in *Allsbury* that the Fifth Circuit is likely to follow the "Third Circuit Rule" insofar as it holds that it is inappropriate for an ALJ to rely on the guidelines to the exclusion of vocational testimony when a non-exertional limitation is found and determined to affect the claimant's RFC. *See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

limitations. *See Allsbury*, 460 F. Supp. 2d at 722. To this extent, Plaintiff's objection appears to confuse the completeness of the ALJ's examination in considering possible contingencies with vague, internal inconsistencies. [20] The ALJ properly sought information that would have been essential had he made an alternative finding with respect to other aspects of his analysis. The Court finds that the ALJ's thoughtful analysis is in no way contradictory as a result of his consideration of alternative findings and their ramifications.

When questioned directly about a person with the limitations of the Plaintiff, the vocational expert, Mr. Marnan, stated that such a person could perform the tasks necessary to successfully fulfill the requirements of the jobs at issue. [21]  The vocational expert did acknowledge that if an individual suffered from a condition causing the frequent need to urinate, that person's ability to perform light work would be significantly impacted insofar as outdoor work is concerned. In contrast, the ALJ determined that Plaintiff did not suffer from that condition, and therefore it is a reasonable inference that Plaintiff's ability to perform light work would not be impacted by a condition he was found not

---

[20] Plaintiff asserts that the ALJ determined that nothing was wrong with him, but then also arbitrarily decided that Plaintiff suffered from certain limitations. There is little specificity provided in the objection. Regardless, to the degree that the objection involves the issue of the ALJ's reliance upon the medical-vocational guidelines, and also the testimony of the vocational expert, the Court finds the ALJ acted appropriately and thoroughly.

[21] The transcript (Tr. at 498) states the following regarding this issue:

Q: Assume somebody who's 35 years old, who has a high school education, has past relevant work as Mr. Palomino has as a stocker, field maintenance worker, and a painter's helper. I would like you to assume that this person is limited to light work, lifting restriction is 10 pounds frequently, 20 pounds occasionally. I would like you to assume that this person needs access to the lavatory. Does ready access to a lavatory significantly impact light work?

A: Significantly, it certainly impact light work. Significantly, it would significantly impact outdoor light work, but indoor probably you know I would say no not significantly.

to suffer from. However, when counsel for the Plaintiff questioned Mr. Marnan, the hypothetical individual described to the vocational expert suffered from symptoms and ailments that the particular Plaintiff in this case was found not to suffer from.[22] Tr. at 500. Further, the ALJ was not bound by a decision regarding the disability or limitations of Plaintiff that he did not make. Therefore, the hypothetical question posed by the ALJ to the vocational expert did not need to reflect allegations of disability made by Plaintiff, but found to be unsubstantiated by objective medical evidence in the ALJ's findings.

As a result, the ALJ considered the testimony of the vocational expert to demonstrate that even if Plaintiff suffered from the alleged condition, he was capable of performing jobs that are available in the national economy in significant numbers. Tr. at 498. Plaintiff was found to be able to perform the jobs of mail clerk, office helper, and storage facility rental clerk, which are categorized as "unskilled." The record clearly indicates that these jobs are available in significant numbers in the national economy. [23] Tr. At 500.

Plaintiff also objects that the ALJ found that Plaintiff left Albertson's only because the store closed, but then also determined that Plaintiff could no longer perform his past relevant work. Pl. Br. at 10. Plaintiff is correct that the vocational expert testified that the position at Albertson's was

---

[22] The transcript (Tr. at 500) states the following regarding the issue as it applies to the job of mail clerk:

Q: Okay and how would, he, my client testified that the first three fingers of his left hand are numb permanently okay, does that have any impact on the job?

[23] The vocational expert testified that there were roughly 60,000 mail clerk positions, 150,000 office assistant positions, 45,000 storage facility clerk positions available at the time of the hearing. All of the data above was based on availability in the national economy. *See* Tr. at 498.

a medium exertional level job ("medium duty" or "medium work"), and the ALJ adopted this conclusion. Tr. at 17, 496. Plaintiff then contends that as a result the ALJ inappropriately determined that Plaintiff had a limitation restricting him to only light work after determining that the only reason he left the medium level job was because the store closed. Pl. Br. at 10. However, a review of the record reveals that the alleged inconsistency is not present. There is evidence in the record indicating that Plaintiff's position at Albertson's was substantially altered in the weeks immediately following his diagnosis and treatment. Tr. at 490-91.  The ALJ determined that Plaintiff has not engaged in "substantial gainful employment activity" since the onset of his disability, which occurred while he was employed at Albertson's, and Plaintiff attached evidence to his brief suggesting that he was not performing medium duty work at Alberton's after this date.   Plaintiff himself describes the Alberton's position as being "light" in nature during this time period after the onset date of his disability. Tr. at 490-91. Therefore, the ALJ could have relied on the vocational expert's testimony, which indicated that *in general* the job at Albertson's would be classified as medium duty, and also Plaintiff's statements that he was performing less than medium duty functions at the end of his employment with Albertson's. Tr. At 490, 496.  Dr. Medellin released Plaintiff to return to part-time work on February 14, 2002, not full-time work. Tr. at 398. The ALJ ultimately determined that Plaintiff is capable of performing light duty work, and this finding is consistent with the fact that Plaintiff himself described his part-time work at Alberton's as being "light" in nature after the onset date of his disability.

The ALJ's determination that Plaintiff left his position because the store closed, and not because of his disability is consistent. Specifically, there was substantial evidence in the record for the ALJ to conclude that the job at Albertson's, as well as Plaintiff's other previous work, was

-23-

categorized as medium duty work. Tr. at 490-91, 496. Further, the evidence supports the finding that Plaintiff's job requirements at Albertson's had temporarily been reduced from medium duty to light duty after the onset date of his disability, and he eventually left this job because the store closed and not because of limitations associated with his disability and treatment.

**C.     The ALJ met his obligation to fully develop the record and properly adopted the opinion of the treating physician.**

Plaintiff also argues that the ALJ adopted the opinion of Dr. Brazeale, who is not mentioned anywhere within the ALJ's conclusions. Dr. Brazeale apparently concluded that Plaintiff's impairments were non-severe. Pl. Br. at 10. However, the ALJ's written opinion proves this contention to be inaccurate. *See* Tr. at 14-19. The ALJ explicitly acknowledges that Plaintiff does indeed suffer from a severe impairment. Tr. at 18. The ALJ's conclusion clearly parallels the treatment notes and conclusions of the treating physician Dr. Medellin. Tr. at 14-16. The ALJ is not only consistent in his adherence to and reliance upon the opinion of the treating physician in general, but he is also exceedingly specific in citing a series of dates and direct quotations excerpted from the notes and reports of Dr. Medellin. Tr. at 16-17.

The ALJ has a duty to fully develop the record.  The ALJ mentioned, if not relied on, the fact that the Plaintiff left Albertson's because the store was closing. Tr. at 16. This determination was interpreted by the ALJ as demonstrating that the record did not contain objective evidence of fatigue or urinary frequency. Tr. at 16-17. However, Plaintiff contends that the ALJ, pursuant to provisions contained in Social Security Rulings and his general obligation to develop the record, was bound to inquire into what type of work Plaintiff performed while he stayed at Albertson's and also his

reasons for leaving.[24] *See* Soc. Sec. R. 84-25.  Plaintiff contends that the record contains evidence

that he only went back and attempted to work at Albertson's because he was instructed that if he did

not do so, he would lose his health insurance. Tr. at 68.

Initially, it must be noted that while Social Security Rulings are considered persuasive, they

lack the force of law. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979). In appropriately

considering the provisions as guidelines, Plaintiff is accurate in his assertion that in some situations,

the ALJ must seek confirmation with the employer regarding why the work in question was

terminated in order to meet the obligation to fully develop the record. Soc. Sec. R. 84-25. However,

Plaintiff's argument fails to properly identify the exception to the requirement that is applicable to

this case. The duty of the ALJ to inquire is clearly excepted in a situation where there is other

supporting evidence for his determination.[25] *Id*. In the instant case, Plaintiff himself testified that the

reason he left the store was because it closed. Tr. at 490. This testimony provides substantial evidence

for the ALJ to adopt it as his own opinion, which the record clearly indicates he did in this case. Tr.

at 17. Further, even absent the testimony of  Plaintiff, the relevant provision makes clear that where

the "information of the employer is inconclusive or none is available, the reason. . . may be confirmed

with the person's physician or other medical source." Soc. Sec. R. 84-25. Therefore, assuming that

Plaintiff's own testimony was not sufficient to satisfy the requirements imposed on the ALJ, the

ALJ's extensive review of Dr. Medellin's notes and medical findings certainly would be. Tr. at 16-18.

---

[24]The Plaintiff cites the relevant sections involving performance of work under special conditions, and development of reasons for work discontinuance or reduction, contained in the Social Security Rulings. *See* Soc. Sec. R. 84-25.

[25] "If impartial *supporting evidence is not already a part of the claims file*, confirmation with the employer is required." Soc. Sec. R. 84-25. (*emphasis added).*

-25-

## VI. Conclusions

The conclusions of the ALJ find support in a careful review of the record and his decision-making process. The ALJ specifically stated that in determining whether Plaintiff had the RFC to perform jobs that were available in significant numbers in the economy, he must consider all symptoms, including pain, and also the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence in the record. Additionally, the ALJ's determinations of Plaintiff's ability to perform work were consistent with objective medical evidence in the record. To the extent that the ALJ made conclusions adverse to the allegations made by Plaintiff, he was justified in doing so. The Court finds the ALJ also satisfied the obligation to fully develop the record.

Accordingly, the Court OVERRULES Plaintiff's objections to the Magistrate Judge's recommendation, ACCEPTS the recommendation, and AFFIRMS the Commissioner's denial of Plaintiff's application for disability and disability insurance benefits.  The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 26th day of June, 2007.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE